

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00183-CV

———————————————

JOHN BRADLEY ASHBURN AND POST OAK APPALACHIA, LLC, Appellants

V.

ROBERT J. MYERS, JOHN J. SHAW, AND MYERS SHAW, Appellees

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-315749-20

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I.  Introduction

Appellants John Bradley Ashburn and Post Oak Appalachia, LLC bring one issue challenging an award of attorney's fees to Appellees Robert J. Myers, John J. Shaw, and Myers Shaw.[1]  The fee award was made after Appellees were discharged on their answer in a garnishment proceeding.  We sustain Appellants' argument that Appellees failed to properly segregate their fee claim between claims for which fees were recoverable and those for which fees were not recoverable.  Appellees, however, introduced some evidence of a reasonable and necessary fee.  Thus, we reverse and remand the fee issue to the trial court to determine a reasonable and necessary fee when properly segregated, but we affirm the judgment in all other respects.

### II.  Background

Appellants hold a multi-hundred-thousand-dollar judgment against judgment debtors identified as an individual and two LLCs.  As a postjudgment recovery vehicle, Appellants filed an application for a writ of garnishment that named Appellees as garnishees.  The application claimed that Appellees had been retained as legal counsel to represent the judgment debtors in a lawsuit.  Appellants sought to garnish a retainer supposedly paid by the judgment debtors to Appellees.  The application stated in part that

---

[1]The notice of appeal filed in this matter named one of the Appellees as John J. Myers.  As reflected by the pleadings filed in the trial court and the style of those proceedings, the Appellee is John J. Shaw.

[one of the Appellants] has been in contact with certain counsel in the Lawsuit, and it is his belief that Garnishee would require a substantial retainer from Judgment Debtors before they would appear and represent Judgment Debtors in the lawsuit. Myers and Shaw ha[ve] appeared in the Lawsuit, leading Plaintiff/Garnishor to believe Garnishees do indeed hold funds belonging to one or more of the Judgment Debtors in one or more IOLTA accounts.

Our record does not contain the writ that was issued; however, a writ was apparently issued and served on Appellees. Appellees responded by filing a combined multi-page answer, motion to quash, and motion for sanctions. This pleading alleged among other things that (1) one Appellee—Myers Shaw—was a "dba" of the other Appellees and not a distinct legal entity; (2) Appellees were not indebted to judgment debtors, nor did they hold any property, money, or any other thing of value belonging to the judgment debtors; (3) the doctrine of attorney immunity should bar an attempt by opponents in a lawsuit from seizing funds held by attorneys to secure payment of their fees and expenses; (4) attorney trust accounts are not subject to garnishment; and (5) the writ should be quashed because it relied on an affidavit that was conclusory, speculative, and based on hearsay. The remainder of the pleading's substantive allegations involved Appellees' request to sanction Appellants for filing the garnishment application. The pleading also sought to recover attorney's fees under Texas Rule of Civil Procedure 677. The trial court set a single hearing date for both the application for the writ and the motion to quash and for sanctions.

Appellees next amended their answer and motion to quash. The amended pleading added an allegation that the judgment underlying Appellants' garnishment application was not final.

Appellants responded to Appellees' answers and motions to quash and for sanctions. The multi-page response detailed the basis for Appellants' garnishment application and responded to Appellees' arguments that they held no funds of the judgment debtors, that the underlying judgment was not final, that attorney immunity was a defense to the garnishment, and that attorney trust accounts were not subject to garnishment. The response also addressed Appellees' sanction request. The response concluded that Appellees could recover fees under Texas Rule of Civil Procedure Rule 677 only for answering the garnishment action, should that action be unsuccessful, and could not recover fees for an attempt to quash the writ or for seeking sanctions. Appellants' response was supported by a revised affidavit in support of the garnishment application.

The response prompted a reply from Appellees. A substantial part of the reply challenged Appellants' motives in filing the garnishment application and argued that sanctions were warranted. The reply, however, augmented Appellees' argument regarding why the judgment against the judgment debtors was not final, why attorney immunity should be a defense to a garnishment action, and why attorney trust accounts should not be subject to garnishment. The reply also responded to

Appellants' argument that sought to limit the matters for which fees could be recovered.

The trial court conducted its hearing on the writ application and Appellees' answer, motion to quash, and motion for sanctions. Counsel for Appellants forewent swearing in the sole Appellee who appeared as a witness. A substantial amount of the hearing involved recriminations about the motive for issuing the writ and alleged failures to communicate between the lawyers. Appellees also argued their various points challenging the validity of the garnishment.

At the end of the day, Appellees represented that they had not been paid anything by the judgment debtors or anyone on their behalf. Appellants' counsel accepted this representation and agreed that the trial court should enter judgment discharging Appellees from the writ; Appellants' counsel stated that

> Mr. Myers has asserted in his response and then again more clearly in his reply, as well as here before this Court today, that neither he, nor Mr. Shaw, nor his firm hold any funds belonging to [the individual judgment debtor]. That is good enough for us, and as far as garnishments go, I think that is the end of the story.

At the hearing, Appellees also continued to press their claims for attorney's fees. Before Appellants' counsel represented that Appellees who had appeared at the hearing need not be sworn in as witnesses, Appellees' counsel stated,

> I do need to put on some evidence about the attorney's fees that we have incurred, which is substantially more than one would find in a normal garnishment case for the reasons that we set forth in our reply. We've done a great deal of research to try to determine . . . whether attorneys' trust accounts are indeed subject to garnishment.

5

Frankly, my first thought was whether the [Texas Citizens Participation Act] applies. I resolved that pretty quickly. Apparently there's a specific exception for postjudgment things, and sometimes I actually read, so I got that resolved pretty quickly.

But these other issues about, you know, whether, in fact, it's subject to garnishment in the first place, whether the attorney immunity doctrine applies, you know, issues about whether the [c]ourt's judgment was indeed final or whether there is a portion of it that the [c]ourt granted without subject[-]matter jurisdiction to do so, all . . . done and contemplated in connection with mine and Mr. Shaw's defense of this garnishment action.

And . . . I can give the [c]ourt a number. It's $13,250 thus far at the rate of $500 an hour, 26.5 hours spent by me. Mr. Shaw had some time in it too, but I'm not even counting his time or that of my paralegal. That's just mine, 26 and a half hours, so I'll swear to that under oath if I need to, but at a minimum, we're going to be asking for that as award of attorney's fees that we put in this thing.

Appellants responded to Appellees' statement with their view that much of the work Appellees did in response to the writ was unnecessary because their representation that they did not hold any of the judgment debtors' funds was sufficient to resolve the matter. Appellees countered that Appellants sought to characterize the matter as a simple garnishment proceeding when Appellants had set in motion the question whether an attorney's trust account could be garnished. Again, Appellees questioned Appellants' motive for filing the garnishment proceeding, and Appellants defended their actions. In response to the trial court's inquiry, Appellants' counsel defended their action in not nonsuiting the writ application once Appellees answered that they held no property or effects of the judgment debtors because of the need to defend against Appellees' sanctions claim.

6

As the hearing wound down, Appellants raised a more focused objection to Appellees' fee claims. That objection took the following form:

> I don't believe Mr. Myers has segregated his attorney's fees from the time spent to simply answer garnishment and say that he had nothing versus all the other 30-plus pages of research and sanctions. I think those should definitely be segregated differently.
>
> I think in the *Rohrmoos* case[2] he needs to have specific tasks multiplied by the time it took in order to be sufficient.

When the trial court challenged Appellants to tell the court their view of what Appellees' reasonable fee should be, they demurred from giving a definite answer. Appellants stated that they had not seen a statement itemizing Appellees' work but felt that any work done beyond the drafting of an answer and short affidavit was excessive. When pressed for an answer by the trial court, Appellants opined that a fee of no more than $750.00 was warranted.

The trial court then noted that the evidence it had heard so far gave it "a difficult time ascertaining information used in connection with . . . going forward on the motion for sanctions versus a response under a more complex garnishment action like this." The trial court stated its inclination to both deny the writ and the sanctions request as well as its inclination "to give a reasonable and necessary attorney's fee, given the complexity of the nature of this particular case."

Before responding to the trial court's request for additional information, Appellees challenged Appellants' premise of why their answer resolved their liability

---

[2] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019).

7

as a garnishee. Appellees asserted that they were placed in a position where they had to research not only their liability at the time the writ was served but also whether they might be liable to Appellants should they accept a retainer from the judgment debtors between the time of service and the time the trial court determined the validity of the writ. Appellees also expressed the view that Appellants were not challenging whether their fees were reasonable but whether they were necessary. Appellees indicated that they had kept detailed billing records and would file redacted copies of those records with the trial court and would copy them to opposing counsel. During this discussion, Appellees worked in the following statements: "But it would be . . . my testimony as an officer of the [c]ourt that every hour that we've spent in connection with this thing was necessary in this particular circumstance. It'd be different if we were a bank. I concede that, but we're not, and they must concede that."

Appellants indicated that it was acceptable for Appellees to provide their fee statements and, to a certain extent, accepted the premise that additional research might have been required to address Appellees' concern about their liability should they accept a retainer during the pendency of the writ. That being said, Appellants rejected that Appellees could recover any fees associated with their sanctions motion.

The trial court then ruled that it was denying both the writ application and the motion for sanctions. The trial court ordered Appellees to deliver a fee statement to Appellants' counsel and, if agreement could not be reached on the fee that should be awarded, to file the statement with the court.

Appellees complied with the trial court's instructions. They submitted a cover letter to the trial court with an attached fee statement in the form of an invoice. The letter stated that the parties had agreed to the authenticity of the invoice but that Appellants reserved the right to object to the reasonableness and necessity of the fees. Appellees reiterated their argument that the garnishment proceeding at issue was not "a run-of-the-mill bank garnishment." The attached invoice contained entries detailing the work done, the date that the particular work was done, the initial of the person performing the work, the hourly rate charged, and the total amount billed for each entry. The invoice also billed costs that were fees associated with e-service, postage, and a hearing transcript. The total of the fees sought was $13,275.00.

Appellants filed a written objection to the fee request. Their primary objection was that Appellees had failed to present a proper lodestar calculation. The objection concluded with Appellants reiterating the position that they had taken at the hearing; any time that was spent researching and drafting after Appellees had answered was unnecessary because the answer stated that Appellees did not possess funds belonging to the judgment debtors. In an attachment to the objection, Appellants also challenged various individual entries on the invoice. Many of the objections listed on the exhibit challenged the billing of fees related to Appellees' sanctions motion that the trial court had denied.

The trial court entered an order formalizing its ruling denying Appellants' garnishment application and Appellees' motion for sanctions. The order found that

Appellees' reasonable and necessary fees were $12,791.36. This award included the expenses that Appellees sought. It reduced the fee request by apparently excluding any time billed by a paralegal who had worked on the matter and that of the other individual Appellee, who had appeared but had not argued at the hearing. By these deductions, the trial court appears to have held Appellees to their representation that their fee request included only the fees of the Appellee who argued and not those of the other individual Appellee or their paralegal. Appellants subsequently filed a notice of appeal.

### III. Standard of Review

The question of whether a party has a legal basis to recover attorney's fees is one we review de novo. *Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 627 (Tex. App.—San Antonio 2011, no pet.). "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos*, 578 S.W.3d at 489. "Both elements are questions of fact to be determined by the fact[]finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id.*

The question of whether a party has segregated a fee claim—between those for which fees are recoverable and those which are not—is one of factual sufficiency when the fee claimant has offered some evidence of its unsegregated fee. *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 145 (Tex. App.—Dallas 2006, no pet.) ("[Appellant's] argument that [appellee] failed to segregate its attorneys' fees raises an

10

issue as to the factual sufficiency of the evidence to support the jury's finding of the reasonable amount of [appellee's] attorneys' fees for presenting its counterclaim.").

## IV. Analysis

### A. Rule 677 mandates that a garnishee shall recover its reasonable attorney's fee when discharged on its answer.

"Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'" *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding) (citing *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016)). A statute may require the mandatory payment of attorney's fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("Statutes providing that a party 'may recover[,]' 'shall be awarded[,]' or 'is entitled to' attorney fees are not discretionary.").

Texas Rule of Civil Procedure 677 is a mandatory basis for the recovery of fees by a garnishee from the garnishor when the garnishee is discharged upon its answer by providing that "[w]here the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff[.]" *See* Tex. R. Civ. P. 677.

"Reasonable compensation" and "costs" as those terms are utilized in Rule 677 have long been interpreted to include attorney's fees. The Texas Supreme Court held in 1887 that

11

[b]y compensation is meant a sufficient sum to remunerate the garnishee for expenses necessarily incurred in protecting his interest in the proceeding. That reasonable attorney's fees is a necessary expense in every case we have no doubt. . . . Whatever else it may include, we are clearly of the opinion that the statute was intended to cover a reasonable fee to the garnishee for the services of an attorney in assisting him in the proceeding.

*W.R. Johnson & Co. v. Blanks*, 4 S.W. 557, 558 (Tex. 1887) (interpreting "Rev. St. art. 219"); *see Spector Gadon & Rosen, P.C. v. Sw. Secs., Inc.*, 372 S.W.3d 244, 248 (Tex. App.—Dallas 2012, no pet.) ("'Costs' under [R]ule 677 include attorney's fees."); *see also Sorenson v. City Nat'l Bank*, 49 S.W.2d 718, 722 (Tex. [Comm'n Op.] 1932) (analyzing statute that was predecessor to Rule 677 and holding that "[t]he above statutory provision for allowance of 'reasonable compensation' to the garnishee who is discharged in garnishment certainly entitles this bank to be reimbursed for such sums of money as it was reasonably required to expend in protecting its interest in this suit. This includes a reasonable attorney's fee.").

### B. We set forth the standards that govern proof of a reasonable and necessary attorney's fee.

The Texas Supreme Court recently revamped and clarified how a party must prove up its fees. *See Rohrmoos*, 578 S.W.3d at 498–501. *Rohrmoos* clarified that the lodestar method of proof was the "starting point" for an attorney's fee calculation. *Id.* at 498. The elements of the lodestar calculation include "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing

12

such services." *Id.* In the Texas Supreme Court's view, the figure yielded by this base lodestar calculation "should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Id.*

A second step in the fee calculation process applies factors outside the lodestar's arithmetical formula, and this step applies what is known in Texas law as the *Arthur Andersen* factors.[3] *Id.* at 494–97. *Rohrmoos* held that this second step remains viable in the process of determining fees; though after *Rohrmoos*, it appears

---

[3]The factors derived from the Texas Supreme Court's opinion in *Arthur Andersen & Co. v. Perry Equipment Corp.* are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d 812, 818 (Tex. 1997) (op. on reh'g).

that the *Arthur Andersen* factors' weight in making a fee calculation is diminished. *See id.* at 499–501. The impact of the *Arthur Andersen* factors is diminished because many of those factors are subsumed within the lodestar calculation. *Id.* But the factors retain some sway for a fee claimant to argue that the factors should be considered to enhance the fee claimant's recovery. *Id.* at 502. When, however, "a fee claimant seeks an enhancement [based on the *Arthur Andersen* factors], it must produce specific evidence showing that a higher amount is necessary to achieve a reasonable fee award." *Id.* at 501.

### C. A fee claimant must segregate between fees expended for claims for which a recovery may be had and those for which a recovery may not be had.

Because Texas's application of the American rule of fee recovery prohibits a fee recovery unless that recovery is provided by statute or contract and because suits often involve a mix of claims, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006).[4] The requirement that fees be segregated between claims permitting and not permitting fee

---

[4]The obligation to segregate fees is a question of law that we review de novo; the question of whether fees can or cannot be segregated presents a mixed question of law and fact. *Chapa*, 212 S.W.3d at 312–13; *Namdarkhan v. Glast, Phillips & Murray, P.C.*, No. 05-18-00802-CV, 2020 WL 1969507, at *9 (Tex. App.—Dallas Apr. 24, 2020, pet. filed) (mem. op.); *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 671 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The need to segregate attorney's fees is a question of law, but the extent to which certain claims can or cannot be segregated is a mixed question of law and fact.").

recovery is not satisfied by proof that the underlying facts of the two classes of claims are intertwined; instead, to recover fees that overlap the two classes of claims, there must be proof that the legal service for which fees are sought advanced both claims for which fees are recoverable and those for which fees are not recoverable. As we recently explained,

> "An exception exists only when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." [*Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017)] (citing *Chapa*, 212 S.W.3d at 313–14). But a common set of underlying facts alone does not relieve a party of its duty to segregate; "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14. "The duty to segregate fees applies unless a party meets its burden of establishing that the same discrete legal services were rendered in support of both recoverable and unrecoverable claims." *GR Fabrication*[*, LLC v. Swan*, No. 02-19-00242-CV,] 2020 WL 2202325, at *10 [(Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.)] (citing *Chapa*, 212 S.W.3d at 313–14).

*Wylie v. Simmons*, No. 02-19-00241-CV, 2020 WL 7776796, at *14 (Tex. App.—Fort Worth Dec. 31, 2020, pet. filed) (mem. op.) (footnotes omitted).

The need to segregate fees may reach a level of allocating the time spent in drafting claims in pleadings between claims for which a recovery may be permitted and those for which a recovery is not. *Yamin v. Carroll Wayne Conn, L.P.*, 574 S.W.3d 50, 71 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding that party seeking fees could "not recover fees, even if nominal, for researching and drafting those parts of its pleadings, motions, discovery, briefs, responses, or proposed orders and jury charges that pertain only to claims for which fees are not recoverable").

15

Even if only a nominal amount of time is spent on the claim for which fees are not recoverable, the fee must still be segregated. *Id.* But the segregation standard recognizes that certain services cross-pollinate between both classes of claims because they "may be necessary whether a claim is filed alone or with others." *Chapa*, 212 S.W.3d at 313.

Further, the proof necessary to support a finding that fees were properly segregated is not particularly high; an opinion by an attorney that a certain percentage of the fees were spent on claims for which fees were not recoverable is a sufficient basis for a segregated award. *See RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.) ("[I]t is sufficient to submit to the fact[]finder testimony from a party's attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable.").

If there is a failure to properly segregate a fee claim, the matter usually should be remanded because evidence of unsegregated fees is some evidence to support an award of fees. *Chapa*, 212 S.W.3d at 314–15. Thus, the matter should be remanded to calculate what the properly segregated fee should be. *Lindemann Props., Ltd. v. Campbell*, 524 S.W.3d 873, 889 n.4 (Tex. App.—Fort Worth 2017, pet. denied) (op. on reh'g).

### D. Appellees failed to properly segregate their fee claim.

Three principles govern this case; two support Appellees' fee recovery, but the third requires that we reverse and remand. First, Rule 677 mandates that Appellees

are entitled to recover their reasonable attorney's fees.  Second, the invoice submitted by Appellees is some evidence of their reasonable and necessary fees calculated under the lodestar method.  Third, Appellees failed to segregate their fees between tasks for which fees are recoverable and those which are not.

The crux of Appellants' argument that Appellees failed to segregate their fees is as follows:

> In this case, in addition to answering the Writ of Garnishment, Garnishees filed a Motion to Quash and a Motion for Sanctions and lat[]er, an Amended Motion to Quash and a Motion for Sanctions. These motions included arguments for[] a lack of capacity for their firm to be sued, absence of liability, attorney immunity, attorney trusts accounts not subject to garnishment, wrongful garnishment[,] and an argument that the underlying judg[]ment was not final.  All of Garnishees['] ancillary claims were either denied or [were] not ruled upon.  While the court[']s denial of the Writ of Garnishment was the sole basis for fee shifting to be appropriate, Garnishees cavalierly refused to segregate their fees *despite the court['s] warning Garnishees of the effect of "Rohrmoos"* by name[] and granting Garnishees a full seven days from the date of hearing to submit a proper billing statement. [Record references omitted.]

This argument mixes concepts of the proof of reasonable and necessary fees and segregation, but it does argue that Appellees improperly recovered fees that were associated with their denied motion for sanctions.  Appellees' brief never addresses this argument but instead addresses why proof of their fees met the standard of *Rohrmoos*.

We conclude that Appellees did offer some evidence of a reasonable and necessary fee calculated in accord with the lodestar method and explained why that

17

fee was higher than in a routine case but failed to properly segregate their fee claims. Appellees provided an invoice that met the standards of proof required by *Rohrmoos* in that it contained the various components for a lodestar calculation. They presented a basis to award a fee that was higher than that usually awarded a garnishee that was discharged on its answer; the number of hours spent on the matter reflected the complexity of the matter. They also explained why they spent time researching an additional matter even though their answer stated that they held no property or effects of the debtor; they were concerned whether the payment of a retainer between the time of service of the writ and the court's ruling on its validity might capture funds. And Appellants forewent sworn testimony from Appellees on the fee issue, permitting one of the Appellees to state as an officer of the court that the fees were necessary and why the garnishment proceeding was extraordinary.[5] The Appellee also noted that he did not view that Appellants were attacking the reasonableness of the fee—a statement that Appellants did not challenge. Thus, Appellees presented some evidence regarding why their higher-than-normal fee was reasonable and necessary under the circumstances of this case. Appellants disagree that the matter warranted a higher-than-normal expenditure of fees, but at bottom, Appellants' argument is that

---

[5]*See Cont'l Cas. Co. v. Davilla*, 139 S.W.3d 374, 380 (Tex. App.—Fort Worth 2004, pet. denied) ("Although an attorney's statements must be under oath to be considered evidence, the opponent of the testimony can waive the oath requirement by failing to object when an objection is necessary." (citing *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997))); *see also Anderson v. Safeway Tom Thumb*, No. 02-18-00113-CV, 2019 WL 2223582, at *11–12 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (per curiam) (mem. op.) (same).

they have a different opinion of what was reasonable. That is a question of fact that the trial court resolved adversely to Appellants' view. *See Rohrmoos*, 578 S.W.3d at 489.[6]

But the evidence is lacking on the issue of segregation. Appellees offer no rationale why they could recover the fees for the time spent on researching, drafting, and arguing a motion for sanctions that was denied. Then their proof does not segregate between the fees spent on the sanctions motion and the tasks for which they could receive reasonable compensation for protecting their interests in responding to the writ. Admittedly, the invoice Appellees filed carefully avoids a reference to the sanctions motion. But the invoice also contains no breakdown, or indeed any indication, that the fee billed was only for research and drafting that did not include the sanctions issue. Further, the number of hours for the Appellee whose fees were primarily reflected in the invoice and on which the trial court apparently based its fee award were slightly less than what he told the court his total number of hours spent on the entire matter had been—24.5 versus 26.5 hours. But nothing indicated that the two-hour difference was an adjustment to account for and deduct the unrecoverable fees for the sanctions motion. Thus, we conclude that (1) Appellees were required to segregate between the fees recoverable under Rule 677

---

[6]Appellants also make an argument that we interpret to mean that Appellees made a judicial admission that the matter required only a couple of hours of work because determining how to answer a garnishment only requires that period of time. The statement cannot be read as an admission that it took only two hours of work to respond to the garnishment in this case. Indeed, Appellants ignore the next paragraph of the record in which Appellees explain why additional research beyond that normally required to answer a garnishment was needed.

and those for prosecuting the denied sanctions motion and (2) Appellees' proof fails to do so.

We hold that there was some evidence of Appellees' reasonable and necessary fees but that the evidence failed from the factual standpoint of distinguishing between those fees that were recoverable under Rule 677 and those that were not recoverable because they were spent on the denied sanctions motion. We therefore sustain Appellants' sole issue.[7]

## V. Conclusion

Having sustained Appellants' sole issue, we reverse the trial court's judgment as to the amount of attorney's fees and remand this case to the trial court for a hearing on the issue of fee segregation and to determine what fee, based on that proof, Appellees should receive. We affirm the remainder of the judgment.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: April 1, 2021

---

[7]To ensure that all the arguments raised by the parties are addressed, we note that Appellants' written objection to Appellees' fee statement also asserted that Appellees had failed in the second step of the *Rohrmoos* fee-assessment process by not explaining how the *Arthur Andersen* factors applied. As we noted above, application of the *Arthur Andersen* factors has become less frequent because of the Texas Supreme Court's view that the lodestar calculation captures the impact of most of those factors. *See Rohrmoos*, 578 S.W.3d at 499–502. The supreme court noted the factor involving addressing the difficulty and complexity of a case is often captured in the lodestar calculation by the number of hours spent on the matter. *Id.* at 499–500. That is true in this case. Here, Appellees claimed that the number of hours they spent on the matter was the result of dealing with issues beyond those in a routine garnishment.